UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-24449-CIV-KING

INTERCOL JV CORPORATION, et al.,

      Plaintiffs,

v.

BAL HARBOR QUARZO, LLC, et al.,

      Defendants.

_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR MORE DEFINITIVE STATEMENT

**THIS MATTER** comes before the court upon Defendants' Motion to Dismiss First Amended Complaint or, in the alternative, for More Definitive Statement (the "Motion") (DE 16), filed April 8, 2013. The Defendants argue that the First Amended Complaint (the "Complaint") (DE 3) should be dismissed because twenty-three of the twenty-four counts do not properly state a claim upon which relief can be granted, and the final count should be dismissed for lack of subject matter jurisdiction. The Court, being briefed on the matter,[1] finds that the Motion should be granted in part.

---

[1] In addition to the Motion to Dismiss, the Court has also considered Plaintiffs' Memorandum in Opposition to Motion to Dismiss (DE 21), Plaintiffs' Supplemental Memorandum of Law in Opposition to Motion to Dismiss (DE 30), and Defendants' Reply Memorandum in Support of Motion to Dismiss (DE 31).

## I. BACKGROUND[2]

On February 1, 2013, Plaintiffs, Intercol JV Corporation ("Intercol"),[3] Victoria Giraldo,[4] and Victor Giraldo,[5] filed their twenty-four count Complaint (DE 3) against Defendants Bal Harbor Quarzo, LLC ("BHQ"),[6] Synergy Capital Group, LLC ("Synergy"),[7] OA Developments, Inc. ("OA Developments"), Luna Developments, LLC ("Luna Developments"),[8] Juan Arcila ("Arcila"),[9] and Carlos Mahecha ("Mahecha").[10] Plaintiffs allege that they became the victims of a Ponzi scheme orchestrated by Defendants Arcila and Mahecha, and executed through their companies, BHQ, Synergy, OA Developments, and Luna Developments, when they were fraudulently induced by Defendants to invest in the Bal Harbor Quarzo Hotel Project (the "Hotel Project"). (DE 3, ¶¶ 26-41).

According to Plaintiffs' allegations, the Hotel Project involved the conversion of three adjacent apartment buildings, which had been previously purchased by Defendants

---

[2] The information contained in this section comes from Plaintiffs' Complaint in this action. On a motion to dismiss, the court accepts the non-conclusory allegations as true and views them in the light most favorable to the Plaintiff. *See, e.g.*, *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

[3] Intercol is a foreign corporation incorporated in the Republic of the Marshall Islands, with its offices located in Bogota, Colombia. (DE 3, ¶ 3).

[4] Victoria Giraldo is a resident of Miami-Dade County, Florida. (*Id.*, ¶ 4).

[5] Victor Giraldo is the son of Victoria Giraldo and a resident of Germany. (*Id.*, ¶¶ 5, 182).

[6] BHQ is a Florida Limited Liability Company. (*Id.*, ¶ 6).

[7] Synergy is a Florida Limited Liability Company. (*Id.*, ¶ 12).

[8] Luna Developments is a Florida Limited Liability Company. (*Id.*, ¶ 14).

[9] Arcila is a resident of Miami-Dade County. (*Id.*, ¶ 10).

[10] Mahecha is a resident of Miami-Dade County. (*Id.*, ¶ 11).

in October of 2007 using a $15.5 million mortgage loan, into a profitable hotel.[11] (*Id.*, ¶¶

31-34, 91). Plaintiffs aver that Defendants were aware from the very moment they

purchased the apartment buildings that the Hotel Project's operations would be unable to

generate sufficient income to make interest payments on the mortgage loan by which

Defendants acquired the properties. (*Id.*, ¶ 28). And, accordingly, that Defendants sought

to procure more and more investors (such as Plaintiffs) - whose investments Defendants

induced through misrepresentations and omissions regarding the Hotel Project and its

expected profitability - to use the investors' funds to make the unrealizably-high interest

payments promised to previous investors and to finance the renovations contemplated by

the project. (*Id.*, ¶¶ 28-29, 38).

### A. The Counts

Plaintiffs assert Defendants engaged in a pattern of criminal activity while

perpetrating their scheme to defraud investors, such as Plaintiffs. Accordingly, Plaintiffs

jointly allege a claim against Defendants Arcila and Mahecha for civil racketeering in

violation of Florida's Civil Remedies for Criminal Practices Act (Count IV).

§772.103(3), Fla. Stat. (2013). However, each Plaintiff also alleges facts related to their

---

[11] The apartment buildings were to be profitably converted, one by one, from rental
apartments into a high-end luxury boutique hotel. I.e., the tenants of Building I would be
evicted and Building I would be renovated and converted into a profit-generating hotel
while Buildings II and III would continue to be rented as apartments. Upon completion of
Building I's renovations, the tenants of Building II would be evicted, and Building II
would be renovated, converted, and integrated into the hotel. Finally, Building III's
tenants would be evicted, and the building renovated, converted, and integrated into the
hotel. (*Id.*, ¶¶ 31-34).

individual interactions with Defendants, and each respectively asserts their claims as follows:

### i.    Intercol's Claims

Intercol alleges it was defrauded by Defendants with respect to two separate but related promissory notes issued to Intercol by Defendant BHQ in furtherance of the scheme. (*Id.*, ¶¶ 42-72, 85-141; *Id.*, Ex. A, C). To wit, Intercol alleges that Defendants Arcila and Mahecha made certain misrepresentations and omissions of fact to its principal to induce Intercol to invest in BHQ. (*Id.*, ¶¶ 46, 54-55, 86-91, 93, 97-99, 105-8, 113-16, 135-37). Intercol further alleges that its principal wire-transferred $2,200,000 to BHQ pursuant to an agreement by which Intercol would become a six percent owner of BHQ, receive a guaranteed yearly rate-of-return of ten percent on Intercol's total investment, to be paid semi-annually, and receive a proportionate share of any profits in excess of the minimum guaranteed ten percent.[12] (*Id.*, ¶¶ 56-58, 66-68).

The alleged agreement notwithstanding, on December 18, 2009, BHQ issued Intercol a convertible promissory note in the amount of $2,220,000 (the "First Intercol Promissory Note"), which was executed by Arcila on behalf of BHQ. (*Id.*, Ex. A). Other than the right to receive a return of ten percent per year on the principal, with interest to be paid semi-annually, none of the terms of the First Intercol Promissory Note reflect the alleged agreement between BHQ and Intercol. (*Id.*, ¶ 84). Furthermore, as of July 1, 2011

---

[12] The agreement was allegedly made during an August 2009 telephone call between Mahecha and Intercol's principal, and during a subsequent face-to-face meeting between Intercol's principal and Arcila and Mahecha, which occurred between August 2009 and December 18, 2009. (*Id.*, ¶¶ 56-59, 63-70).

Intercol was owed $299,994.51 in unpaid and outstanding interest accrued under the First Intercol Promissory Note. (*Id.*, ¶¶ 160, 162).

On July 1, 2011, Intercol surrendered the First Intercol Promissory Note to BHQ. (*Id.*, ¶ 154). In exchange, BHQ provided Intercol with certain assurances related to payment of the unpaid interest on the First Intercol Promissory Note, together with $462,500 in cash (which Plaintiffs allege was obtained from Victoria Giraldo that same day) and the Second Intercol Promissory Note, in the amount of $1,757,500. (*Id.*, ¶¶ 155-60). Intercol has come to believe that the notes are not worth what Arcila and Mahecha represented to it, and also alleges that Defendants unilaterally changed the terms of the Second Intercol Promissory Note from those found in the First Intercol Promissory Note.[13]

Accordingly, Intercol additionally alleges claims for: securities fraud (Count I); violation of the Florida Securities and Investor Protection Act (Count II); fraudulent misrepresentation (Count III); violation of Florida's Deceptive and Unfair Trade Practices Act (Count V); conversion (Count VI); conspiracy to defraud (Count VII); reformation of the Second Intercol Promissory Note (Count VIII); breach of the Second Intercol Promissory Note, as reformed (Count IX); equitable accounting (Count X); and imposition of an equitable lien (Count XI).

---

[13] For example, the Second Intercol Promissory Note has a maturity date of July 1, 2014, and, by its terms, "shall be automatically renew [sic] for periods of three years until note is paid or converted to . . . equity." (*Id.*, Ex. C).

### ii.    Victoria Giraldo's Claims

Victoria Giraldo alleges that on July 1, 2011 she was defrauded by Defendants with respect to a promissory note issued to her by BHQ in furtherance of the scheme (the "Victoria Giraldo Promissory Note"). (*Id.*, Ex. B). To wit, Victoria Giraldo alleges that that Defendant Arcila made certain misrepresentations and omissions of fact to induce her to loan BHQ $500,000. (*Id.*, ¶¶ 55, 146-47, 151). Pursuant to the loan agreement, BHQ issued Victoria Giraldo a promissory note in the principal amount of $500,000 and bearing eight to ten percent interest, with principal and accrued interest payable on the maturity date, June 1, 2014 (the "Victoria Giraldo Promissory Note"). (*Id.*, ¶¶ 142, 144, 148; *Id.*, Ex. B). Victoria Giraldo has come to believe that the note is not worth what Arcila represented to her.

Accordingly, Victoria Giraldo additionally alleges claims for: securities fraud (Count XII); violation of the Florida Securities and Investor Protection Act (Count XIII); fraudulent misrepresentation (Count XIV); conspiracy to defraud (Count XV); and violation of Florida's Deceptive and Unfair Trade Practices Act (Count XVI).

### iii.    Victor Giraldo's Claims

Soon after Victoria Giraldo's July 1, 2011 transaction, Arcila contacted her again and sought a further investment of $200,000. (*Id.*, ¶¶ 173-77). Victor Giraldo alleges that, through his agent, Victoria Giraldo, Defendants Arcila and Mahecha defrauded him and

thereby induced him to loan $200,000 to BHQ.[14] (*Id.*, ¶¶ 178-81). To wit, Victor Giraldo alleges that Victoria Giraldo relied on the same omissions and misrepresentations made by Arcila to induce her to enter into the Victoria Giraldo Promissory Note, as well as misrepresentations and omissions made by Arcila and Mahecha during a face-to-face meeting between Victoria Giraldo and Defendants Arcila and Mahecha on July 29, 2011. (*Id.*, ¶¶ 142-52, 173-74, 178-92, 331). Pursuant to an agreement made during the July 29, 2011 meeting, Victor Giraldo invested $200,000 in BHQ, and BHQ issued a promissory note with Victor Giraldo as payee in the principal amount of $200,000 and bearing nine to eleven percent interest, with the principal and accrued interest payable on the maturity date - eighteen months from July 29, 2011 (the "Victor Giraldo Promissory Note"). (*Id.*, ¶ 181; DE 3, Ex. D). Victor Giraldo has come to believe that the note is not worth what Arcila and Mahecha represented to him.

Accordingly, Victor Giraldo additionally alleges claims for: securities fraud (Count XVII); violation of the Florida Securities and Investor Protection Act (Count XVIII); fraudulent misrepresentation (Count XIX); conspiracy to defraud (Count XX); violation of Florida's Deceptive and Unfair Trade Practices Act (Count XXI); conversion (Count XXII); imposition of an equitable lien (Count XXIII); and breach of contract (Count XXIV).

---

[14] Victor Giraldo granted his mother full discretion to invest his funds. (*Id.*, ¶ 182); Victoria Giraldo paid Defendants with a check from Victor Giraldo's account, and the note was issued with Victor Giraldo as the payee. (*Id.*, ¶¶ 179-81).

### B. Defendants' Motion to Dismiss

Defendants' Motion argues that the Complaint ought to be dismissed for a variety of pleading deficiencies. Defendants' allegations in support of their Motion are voluminous: the Complaint ought to be dismissed in its entirety as a shotgun pleading; Count I is barred by the statute of limitations;[15] Counts I, II, III, V, XII, XIII, XIV, XVI, XVII, XVIII, XIX, and XXI improperly include OA Developments and Synergy as Defendants; Counts I, II, III, VII, XII, XIII, XIV, XV, XVII, XVIII, XIX, and XX do not satisfy heightened pleading standards required for those claims; Counts IV, VIII and IX fail to plead essential elements of those causes of action; Counts VI, X, XVI, XXI, and XXII fail to state a claim for which relief can be granted; Counts X, XI and XXIII fail to demonstrate the inadequacy of a legal remedy, as required by those claims; and, while Defendants do not dispute that Count XXIV is a viable cause of action, Defendants argue Count XXIV ought to be dismissed for lack of subject matter jurisdiction once the federal securities claims are dismissed. In a lengthy Response,[16] Plaintiffs oppose almost all of Defendants' arguments.

## II. LEGAL STANDARD ON MOTION TO DISMISS

Rule 8 requires that a complaint include a "short and plain statement" demonstrating that the claimant is entitled to relief. Fed R. Civ. P. 8. To survive a Rule 12(b)(6) motion, a complaint must include "enough facts to state a claim to relief that is

---

[15] Defendants withdrew this allegation in their Reply Memorandum in Support of Motion to Dismiss. (DE 31 at 3).

[16] Plaintiff's Response includes Plaintiffs' Memorandum in Opposition to Motion to Dismiss (DE 21) and Plaintiffs' Supplemental Memorandum of Law in Opposition to Motion to Dismiss (DE 30).

plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (characterizing allegations of parallel conduct in support of a claim for price fixing as falling short of plausible). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

However, claims which allege violations of Section 10(b) of the Securities Exchange Act of 1934 must also meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires a complaint "to state with particularity the circumstances constituting fraud." 15 U.S.C. §78j(b); 17 C.F.R. 240.10b-5; *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). This requires that the Plaintiff "1) specify the statements that the plaintiff contends were fraudulent, 2) identify the speaker, 3) state where and when the statements were made, and 4) explain why the statements were fraudulent." *See Acito v. IMCERA Group, Inc.*, 46 F.3d 47, 51 (2d Cir. 1995); *see also Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194 (11th Cir. 2001).

Additionally, the claims must comply with the Private Securities Litigation Reform Act (the "PSLRA"). 15 U.S.C. §78u-4(b)(1-2). The PSLRA requires that a plaintiff "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed" and it also requires that the plaintiff state with particularity facts giving rise to a strong inference that the defendant acted with the

required state of mind with respect to each act or omission which allegedly violated the statute. *Id.*

When evaluating a motion to dismiss, the Court must take all of the well-pled factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). So long as the complaint properly alleges facts that make its claims plausible, the Court must view the complaint's allegations in the light most favorable to the plaintiff. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010). As a corollary, allegations absent supporting facts are not entitled to this presumption of veracity. *Iqbal*, 129 S. Ct. at 1951. If the Court identifies such conclusory allegations, it must then consider whether the remaining allegations "plausibly suggest an entitlement to relief." *Id.* The Court must dismiss a complaint that does not present a plausible claim entitled to relief.

## III. DISCUSSION

The Court now addresses Defendants' allegations of shotgun pleading, Plaintiffs' alleged failure to meet the requirements of the Rule 9(b) of the Federal Rules of Civil Procedure and the dual requirements of the PSLRA, with respect to the federal securities fraud claims, and Plaintiffs' improper inclusion of their claims for control person liability under §20a of the Securities Exchange Act within their claims for securities fraud in violation of §10b-5 of the Securities Exchange Act. This Court's jurisdiction is invoked solely by the existence of federal questions raised via the federal securities claims, and,

absent those claims, the Court lacks jurisdiction over the remaining claims.[17]

Accordingly, the Court declines to consider the remaining claims at this time.

### A. Shotgun Pleading

The Complaint contains 30 pages of general allegations, organized into 196 paragraphs, which are then restated and incorporated by reference into each of the 24 counts. According to the Eleventh Circuit, shotgun style pleading exists where "the complaint incorporates all of the general factual allegations by reference into each subsequent claim for relief . . . [and] the Court is required to parse the complaint searching for allegations of misrepresentations that could conceivably form the basis of each . . . ." *Ferrell v. Durbin*, 253 F. App'x 253, 259 (11th Cir. 2009). In their Response, Plaintiffs argue that a more definite statement is unnecessary because the general allegations are set forth in an organized fashion, with "all related allegations . . . included in their own individual sections." (DE 21 at 3).

By way of example, Plaintiffs point out that "all allegations related to Defendants' fraud on Plaintiff Intercol in connection with the First Intercol Promissory Note are readily located at the beginning on [sic] page 12 of the [Complaint] in the section titled 'DEFENDANTS' FRAUD PERPETRATED ON INTERCOL.' *See* [Complaint] at 12-22, ¶¶ 85-141." *Id.* However, Plaintiffs' cited example is belied by the very next section of their Response, in which Plaintiffs point to allegations in the Complaint at ¶¶ 13, 22, 37, and 70 which allegedly support Intercol's claim against certain Defendants. *Id.*

---

[17] Despite Plaintiffs' contention to the contrary, there is no diversity amongst the parties, as Plaintiff Victoria Giraldo and most of the Defendants are Florida residents. (*See* DE 3, ¶ 16).

Moreover, it is belied again on page 5 of Plaintiffs' Response, in which Plaintiffs point to the allegations in the Complaint at, *inter alia,* ¶¶ 10, 13, 22, 36-37, 70, 167, which allegedly support Intercol's claim against certain Defendants, and again by Plaintiffs' argument on page 7 of their Response, in which Plaintiffs argue that they have met the particularity requirements of the PSLRA with respect to Intercol's claim, as demonstrated by the Complaint's allegations at, *inter alia,* ¶¶ 46, 54-55, and 57. (*Id.* at 5, 7).

As the Eleventh Circuit has pointed out, this Court is not required to parse the Complaint searching for allegations of misrepresentations that could conceivably form the basis of each of Plaintiffs' claims. *See Ferrell,* 253 F. App'x at 259. Because the Court is readily able to determine that the Complaint incorporates all of the general allegations into each count, and the general allegations are not, as Plaintiffs aver, "structured and compartmentalized so that all related allegations are included in their own individual sections," Defendants' motion for a more definite statement is granted.

### B. Failure to Meet Heightened Pleading Requirements

As the Court has already determined that a more definite statement is required, the Court will engage in a limited examination of Plaintiffs' failure to meet heightened pleading requirements.[18]

The elements of a private securities fraud claim based on violations of §10(b) and Rule 10b-5 are: "(1) a material misrepresentation or omission by the defendant; (2)

---

[18] However, Plaintiffs should ensure that any subsequent amended complaint properly pleads *each of the circumstances constituting fraud* as to each claim and each defendant, as required under Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA, and outlined above in Section II.

scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.* 552 U.S. 148, 157 (2008).

With respect to Count I, Intercol alleges that Arcila and Mahecha omitted facts and made certain misleading statements to Intercol during a face-to-face meeting between Intercol's principal, Jesus Vargas Arevalo ("Vargas"), and Arcila and Mahecha in July of 2009. (DE 3, ¶¶ 46-47, 54-55, 86-91, 93, 97-99, 105-8, 113-16, 135-37). However, certain allegations fail to meet the heightened pleading requirements of a federal securities claim. For example, Intercol alleges that, during the July 2009 meeting, Arcila and Mahecha represented to Vargas that "[Arcila and Mahecha] were prepared to do everything necessary to ensure the [Hotel Project]'s success, including dedicating their full-time efforts to developing and operating the Hotel." (*Id.*, ¶¶ 105).

To meet the requirements of the heightened pleading standards, Plaintiffs must allege *facts* upon which the Court might rely to find that this statement was false, and that Arcila and Mahecha knew it was false when they made it. Intercol's only allegation supporting their claim of falsity with respect to this representation is that "Arcila and Mahecha knew that they were, in fact, dedicating a great deal of their time and efforts in [sic] other endeavors, including but not limited to the Luna Condo Conversion Project and the Terra Condo Conversion Project." (*Id.*, ¶¶ 106). Leaving aside for the moment that this statement could very well amount to nothing more than puffery, the conclusory allegation that Defendants were not dedicating their full-time efforts to the Hotel Project

is not supported by any facts,[19] and, accordingly, Plaintiffs have failed to fail to meet the heightened pleading requirements of Rule 9(b) and the PSLRA.

In the forthcoming amended complaint, Plaintiffs should adhere to the heightened pleading requirements of federal securities fraud claims and plead *facts* which specify why each representation was false or misleading. Accordingly, Count I, to the extent that it is premised upon Arcila and Mahecha's promise to dedicate their full-time efforts to the Hotel Project, is dismissed without prejudice.

### C. Mixing of §10b and §20a Claims

Defendants correctly assert that Plaintiffs improperly included their claims for control person liability under §20a of the Securities Exchange Act within their claims for securities fraud in violation of §10b-5 of the Securities Exchange Act. *See* 15 U.S.C. 78j(b), 15 U.S.C. 78t(a). While it is certainly true that §20a claims are derivative claims which depend upon the existence of a valid §10b-5 claim, §20a claims have their own elements and are properly pleaded in their own count. *See In re Jiangbo Pharm., Inc., Sec. Litig.*, 884 F. Supp. 2d 1243 (S.D. Fla. 2012); *see also Arnold v. McFall*, 839 F. Supp. 2d 1281 (S.D. Fla. 2011). Accordingly, Counts I, XII, and XVII are dismissed without prejudice.

---

[19] Indeed, the Complaint seems to contradict this statement at paragraphs 54-55, where Plaintiffs claim a judgment was entered against Arcila and Mahecha, on July 20, 2009, as guarantors of Terra Conversions Group, LLC's mortgage loan, which Plaintiffs allege was foreclosed upon. (DE 3, ¶¶ 54-55). It seems unlikely that Defendants would be dedicating a "great deal of their time" to a project that was foreclosed upon before any Plaintiff invested in BHQ.

## IV. CONCLUSION

Accordingly, upon careful consideration, it is **ORDERED, ADJUDGED, and DECREED** that Defendants' Motion to Dismiss First Amended Complaint or, in the alternative, to Compel a More Definitive Statement (**DE 16**) be, and the same is, hereby **GRANTED in part**, as follows:

1. Defendants' Motion to Compel a More Definite Statement be, and the same is, hereby **GRANTED**. Plaintiffs **SHALL** file, within **thirty (30) days** of this Order, a second amended complaint, therein providing a more definite statement and avoiding the factual redundancies and overly-inclusive incorporations of the First Amended Complaint (**DE 3**) which constitute shotgun pleadings.

2. Count I, to the extent that it is premised upon Messrs. Arcila and Mahecha's promise to dedicate their full-time efforts to the Hotel Project, be, and the same is, hereby **DISMISSED without prejudice**.

3. Counts I, XII, and XVII, to the extent that they improperly mix claims, be, and the same are, hereby **DISMISSED without prejudice**. Plaintiffs' second amended complaint shall state their respective claims under §§ 10b-5 and 20a of the Securities Exchange Act as separate counts.

**DONE and ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, dated this 12th day of November, 2013.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

**Cc:**   **All counsel of record**